# EXHIBIT B

## LICENSE AGREEMENT

This agreement made as of the 24th day of April 1988 by and between EXECUTIVE ASSET MANAGEMENT, INC. (hereafter the Company) and Norman C. Baker (hereafter the Licensee).

### WITNESSETH

WHEREAS, the Company engages in the business of providing sales systems to the insurance and financial services industry;

WHEREAS, the Company has created and developed for use in the operation and conduct of its business, as a result of considerable effort and great expense, the following copyrighted material: unique and special secrets, methods, procedures, graphic design, special forms and booklets, printed literature, manuals, videotapes, audiotapes, newsletters, computer software; and in addition, trade names, trade marks, service marks, and other recorded material (hereafter collectively called the Licensed System);

WHEREAS, the Company has the right to license and permit others to use the Licensed System and is willing to do so;

WHEREAS, the Licensee is in the business of selling insurance and financial products and rendering of services to the public, and also providing the public with financial advice on insurance and financial matters;

WHEREAS, the Licensee desires to acquire the right to use the Licensed System and the Licensed Works (hereafter defined) in the operation of its business;

NOW THEREFORE, in consideration of the mutual promises contained herein, the Company and the Licensee covenant and agree as follows:

1. THE LICENSE. During the term of this Agreement and subject to all of the terms and conditions contained herein, the Licensee shall have the non-transferrable and non-exclusive right to use the Licensed System in the operation and conduct of its business. The Licensee shall have no right to grant sublicenses. Further, the Licensee shall at the time this Agreement is signed be a licensed Agent with General American Life Insurance Company, producing a minimum of $25,000 of first year commissions constituting at least 50% of the Agent's first year commission and have Errors and Omissions coverage through the General American Life program. A first year Agent with General American may enter this Agreement with less than $25,00 of first year commissions with approval of the General Agent.

2. DURATION OF LICENSE RIGHTS.

(a) The initial term of this Agreement and the license created thereby shall be for a period of four years to commence as of the date written above.

(b) Unless sooner terminated as herein provided, the term of this Agreement shall be automatically reviewed for successive periods of one year each commencing upon the expiration of the initial term and upon the expiration of each one year term thereafter, subject to the payment of the stipulated renewal and service fee and provided the Licensee is in full compliance with all of the terms and provisions herein contained.

3. TERRITORY. The Licensee shall have the right to use the Licensed System in the following geographical territory:

The United States of America

The Licensee acknowledges that its right to use the Licensed System is on a non-exclusive basis and that the Company has the absolute right to grant to any other person (within, or outside, the same geographical area) on whatever terms the Company chooses, any or all of the rights granted to the Licensee herewith (including without the Licensed System and the Licensed Works).

4. FEE

(a) The Licensee shall upon his execution of this Agreement pay the Company an initial service and License fee in the sum of $800.00 if Licensee is a General Agent or Agent of General American Life Insurance Company. This initial service and License fee will be payable on the anniversary of this Agreement as follows: $500 for the first year and $100 for each of the second, third, and fourth years, each payable within thirty days of this anniversary date.

(b) The Licensee shall, upon his execution of this Agreement, agree to pay the Company any additional fees for training and consultation that the Company may provide to the Licensee in order to use the Licensed System. The amount of this fee will be determined by the Company based on its current and standard rates at the time of any such training or consultation or as pre-arranged by Agreement between the company and General American Life Insurance Company.

(c) The annual Renewal License Fee after the initial four years shall be subject to an annual adjustment set at the beginning of each year by the Company as negotiated between the Company and General American Life Insurance Company.

5.  TECHNIQUES, METHODS, KNOW-HOW AND PRESENTATION.

(a) During the term of this Agreement, the Company shall

(i) Provide the Licensee, General American Life Insurance Company in St. Louis, Mo., within thirty (30) days of the date hereof, with a package consisting of Workbooks, Worksheets, and other material relating to the Licensed System;

(ii) From time to time, the Company may also furnish the Licensee, General American Life Insurance Company in St. Louis, Mo., with additional Workbooks, Worksheets, and other materials of the Licensed System (all of the foregoing Workbooks, Worksheets, and other material is hereafter referred to collectively, as the Licensed Works).

(b) The title and ownership of the aforesaid property shall at all times remain in the Company, subject to the use thereof by the Licensee in accordance with the terms and provisions of this Agreement.

6. LICENSED WORKS AND OTHER MATERIAL

(a) The Licensee acknowledges that an integral and necessary part of the Licensed System involves the presentation and use of the Licensed Works published by the Company. The Licensed Works constitute a proprietary right of the Company and its use is subject to all the terms and provision of the Agreement, except that these Licensed Works may only be distributed to regular clients of the Licensee as a necessary part of the presentation and delivery of the Licensed Works.

(b) The Company shall provide the Licensed Works to the Licensee at the price fixed by the Company, plus a customary handling and postage charge. This fixed price for the Licensed Works may be changed by the Company from time to time.

(c) The Licensee shall not reproduce, copy distribute to anyone, excerpt, condense, store on electronic data systems or circulate the Licensed System and Licensed Works or any parts thereof, except only as specifically herein provided and authorized. The licensed use of the Licensed System and Licensed Works by the Licensee is made for the defined use only and the Licensee acquires no rights in the Licensed System or Licensed Works or other material, other than those set forth in this Agreement.

7. COMPLIANCE WITH LAWS, REGULATIONS, USAGE AND PRACTICES.

(a) The Licensee takes full and complete responsibility to conduct its business in compliance with all applicable laws, regulations, ordinances, licenses, and other requirements of any federal state, county, municipal, local or other governmental agency or board, as well as in accordance with standard practices and procedures of the trade. The Licensee releases the Company from any and all errors, omissions, infractions, and noncompliance with respect to any and all such rules, regulations and requirements referred to in this paragraph, in the course and conduct of the Licensee's business.

(b) The Licensee releases the Company from any responsibility to make the Licensee aware of any of the applicable laws, regulations, ordinances, licenses, and other requirements of any federal, state, county, municipal, local or other governmental agency or board, now and in the future, which may be necessary for the approved use of the Licensed System and Licensed Works.

8. LIMITATIONS, AUTHORITY AND RECOGNITION.

(a) The Licensee acknowledges that the Licensed System is granted on a non-exclusive basis and none of the Licensee's rights or obligations under this Agreement may be transferred or assigned in whole or part to any other party or parties.

(b) The Licensee shall have no power or authority to act in the name of or on behalf of the Company.

(c) The Licensee is an independent contractor. This agreement does not constitute or make the Licensee an agent, legal representative, joint venturer or partner of the Company for any purpose whatsoever.

(d) The Licensee acknowledges that the Licensed System and all information to be disclosed in connection therewith by the Company constitute valuable property rights and trade secrets. The Licensee also acknowledges the validity of the Company's copyright rights in and to the Licensed System and Licensed Works and shall not in any way do anything that would infringe upon, contest or harm such rights of the Company in the Licensed System or Licensed Works.

(e) Except as permitted under this Agreement, and except as required in order to carry on and further the business of the Licensee, the Licensee shall keep confidential and shall not divulge to or for the benefit of itself or any other person, entity, partnership, corporation or association any of the Licensed System or the trade secrets obtained from and/or disclosed by the Company under this Agreement.

(f) The Licensee shall use the Licensed System solely in connection with the providing of insurance and financial product sales to its clients.

(g) The Licensee shall not have the right to teach, train, or provide any part of the Licensed System to any other party or parties who are no Licensed by the Company, except as provided in this agreement.

(h) It is the exercise of its sole and absolute discretion, the Company shall have the right to modify and change the Licensed System and Licensed Works from time to time. The Licensee agree that any modifications or improvements to the Licensed System and Licensed Works made by the Licensee shall be the property of the Company.

(i) The Licensee acknowledges that certain Licensed Works contain copyright notices, trademark notices, client disclaimers, and other disclosures intended for the Licensees actual and potential clients and the Licensee hereby agrees not to obliterate, alter, or otherwise change such notices in any way, shape, or form.

9. DISCLAIMER AND WARRANTY.

(a) The Licensee acknowledges that it is an experienced insurance and financial planner and that it has reviewed and fully understands the Licensed System and Licensed Works.

(b) The Company assumes no responsibility for, and makes no representations or warranties with respect to, performance, capability, fitness for any particular purpose, accuracy, or operation of the Licensed System or the Licensed Works or any parts thereof, and responsibility therefor. No representations, warranties or guarantees, express or implied, are made by the Company, and the statements set forth in this section 9 (b) are in lieu of all other representations or warranties of the Company, express or implied, all of which are expressly disclaimed by the Licensee, including without limitation any and all warranties of merchantibility or fitness for a particular purpose.

(c) The Company shall not be liable or responsible for any change or circumstances beyond its control, including without limitation, any changes in federal or other applicable laws or government regulation, which shall affect, dilute or modify the value of the Licensed System.

(d) The Company assumes no duty or responsibility to advise the Licensee of any changes in financial or economic conditions or in applicable laws. The Licensee assumes full responsibility to stay current and abreast of all insurance, tax and securities laws and changes thereto.

(e) The Company makes no assurances or promises that it will assert or inforce its proprietary rights with respect to the Licensed System or Licensed Works against any third party who is alledged to be infringing such rights.

(f) The Company shall have no liability with respect to its obligations, either under this agreement or in connection with the Licensed System or Licensed Works or any parts thereof, for any consequential exemplary, special, or incidental damages, even if it has been advised of the possibility of such damages.

10. TERMINATION BY LICENSEE. The Licensee shall have the right to terminate and cancel this Agreement, during or after the initial term of four years or anytime thereafter by giving thirty days notice to the Company of the intention to terminate.

11. TERMINATION BY THE COMPANY.

(a) The Company shall have the right to terminate this Agreement in the event of:

(i) Non-payment by Licensee of any sums due the Company under the terms of this Agreement; and any sums unpaid in accordance with the terms of this Agreement shall immediately become due and payable by Licensee to the Company

(ii) A breach by the Licensee of any of the provisions of this Agreement; and any sums unpaid in accordance with the Terms of this Agreement

12. PROCEDURES AFTER TERMINATION. Upon the termination of this agreement for any reason, all rights granted to the Licensee under this agreement shall terminate and the Licensee shall:

(a) Promptly pay the Company all sums owing from the Licensee to the Company.

(b) Immediately notify the Licensed Agents to permanently discontinue the use of the Licensed System and Licensed Works.

(c) Promptly surrender to the Company all Licensed Works or other materials relating to the Licensed System.

(d) Refrain from using the Licensed System or Licensed Works or doing anything that would indicate that the Licensee continues to be authorized to use the Licensed System or the Licensed Works.

13. INJUNCTION RELIEF AND DAMAGES.

(a) The Licensee acknowledges that the Licensed System and Licensed Works of the Company are unique, are a substantial value and that a breach by the Licensee of any of the terms and provisions under this Agreement may cause irreparable damage to the Company for which there may be no adequate remedy at law. Therefore, the Licensee acknowledges that the Company shall be entitled to preliminary and permanent injunctive relief to prevent any such violation by the Licensee.

(b) The Licensee agrees that the Company will be damaged by any breach and/or violation resulting form the unauthorized use or distribution of the Licensed System or Licensed Works outside the scope of the License granted hereunder, and that such damages are impossible to measure in money. Therefore, the Licensee agrees that in addition to injunctive relief, the Company shall be entitled to recover as liquidated damages from the Licensee and not as a penalty for any such breach and/or violation of this Agreement, the stipulated sum of three hundred ($300.00) per day for each calendar day such breach and/or violation continues unabated.

(c) In the event the Company shall institute suit against the Licensee for injunctive relief and/or damages as herein provided, the Company shall have the right to recover its reasonable attorney's fees and expenses incurred in connection with any such suit.

14. INDEMNIFICATION. The Licensee agrees to indemnify, defend, and save the Company from and against any and all claims, demands, losses, costs, damages, suits, expenses and liabilities of any kind or nature whatsoever, including without limitations, all legal and other costs of defending any action or proceeding brought against the Company as a result of the activities of the Licensee. Provided however, that any legal action on the part of the Company against third parties for copyright infringements which have arisen out of the activities of the Licensee shall be

at the Company's own expense unless such infringement was caused by the gross negligence of the Licensee.

15. **FAILURE TO EXERCISE RIGHTS.** The failure of the Company to act or exercise any of its rights under this Agreement shall not be construed as a waiver. Any specific right or remedy contained under this Agreement shall not be exclusive, but shall be deemed to be cumulative.

16. **ILLEGALITY.** If any provisions of this Agreement shall be declared invalid or illegal for any reason whatsoever, then not withstanding such invalidity or illegality, the remaining terms and provisions of the within Agreement shall remain in full force and effect in the same manner as if the invalid or illegal provisions had not been contained herein.

17. **SENSE AND CIRCUMSTANCE.** All references made and pronouns used herein shall be construed in the singular or plural, and in such gender as the sense and circumstance require.

18. **BINDING EFFECT OF AGREEMENT.** This Agreement shall be binding upon and shall insure to the benefit of the Company and Licensee and their respective successors, assigns, administrators, heirs and personal representatives, but the foregoing shall not permit the assignment or transfer of this Agreement by the Licensee except as herein provided. The Company may assign its rights and obligations under this Agreement, in whole or in part, without the consent of the Licensee, and upon any such assignment the Company will have no further liability or obligation under this Agreement.

19. **SCOPE OF AGREEMENT.** This agreement constitutes and states the entire agreement between the Company and the Licensee and supercedes any and all prior agreements and understandings by the parties relating to the same subject matter. This Agreement may not be amended or supplemented at any time unless by a writing executed by the parties hereto, and all such amendments and supplements shall, except as otherwise provided hereinafter, be binding upon all other persons interested herein.

20. **CHOICE OF LAW.** This Agreement, is made in the State of New Jersey, and the rights and obligations of the Company and Licensee hereunder, shall be interpreted and construed in accordance with the the laws of the State of New Jersey (other than its rules as to conflicts of laws).

21. **JURISDICTION.** The Licensee agrees that the State of New Jersey shall be the sole and exclusive judicial forum for any cause of action arising under or relating to this Agreement which may be instituted. By executing this Agreement, the Licensee submits generally to the jurisdiction of the courts of the State of New Jersey and agrees that service of process may be upon the Licensee in the same manner as provided in this Agreement for the giving of notice.

22. **NOTICES.** Any notices, consents, approvals, submissions or demands given under this Agreement or pursuant to any law or government regulation, by the Company to the Licensee or by the Licensee to the Company, shall be in writing. Unless otherwise required by law or government regulations, any such notice shall be deemed given if sent by registered or certified mail, return receipt requested, postage prepaid, as follows.

(a) TO THE COMPANY:

EXECUTIVE ASSET MANAGEMENT, INC.
20 Angus Lane
Warren, New Jersey 07060

(b) TO THE LICENSEE:

The aforesaid address for the Company and the Licensee may be changed by notice given to the other party as herein provided.

23. **CAPTIONS.** The Captions preceeding the paragraph of this Agreement are intended only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Agreement or the intent of any provision hereof.

IN WITNESS WHEREOF, the Company and the Licensee have caused this Agreement to be executed the day and year first above written.

EXECUTIVE ASSET MANAGEMENT, INC.

BY: _____
    President

Witness:

_____

BY: _____
    Licensee