*Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

LEAP SYSTEMS, INC.,                          :
                                             :        Civil Action No. 05-1521 (FLW)
                     Plaintiff,              :
                                             :                **OPINION**
        v.                                   :
                                             :
MONEYTRAX, INC. and NORMAN                   :
BAKER,                                       :
                                             :
                     Defendants.             :
_____:

**<u>WOLFSON, United States District Judge</u>:**

Intervenor Todd Langford ("Langford") appeals the Magistrate Judge's September 24, 2009

Order denying his application to unseal portions of the transcript of a recorded settlement[1] (the

"Settlement") between Plaintiff LEAP Systems, Inc. ("LEAP") and Defendants MoneyTrax, Inc.

("MoneyTrax") and Norman Baker ("Baker"). For the reasons stated herein, the Magistrate Judge's

decision is MODIFIED and AFFIRMED.

## BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this appeal, the Court will only recount the relevant facts. This action was

commenced in 2005. The Complaint alleged that Norman Baker, who had been affiliated with

LEAP for years before his withdrawal from active involvement with the company in 2002, had

misappropriated certain proprietary information from LEAP and disclosed such information to co-

defendant MoneyTrax, LEAP's principal competitor. After a year of unsuccessful mediation, this

Court conducted a settlement conference with the parties on March 25, 2008. On that day, the

---

[1]    Langford does not appeal the Magistrate Judge's decision granting him to intervene in
this action for the purposes of moving to unseal the transcript.

parties reached two settlement agreements, one between LEAP and Baker, and the other, between LEAP and MoneyTrax.  Baker's then-attorney, who is also counsel for Langford on this appeal, urged the Court to record the settlement so as to memorialize the terms of the Settlement and the parties' assent to those terms.  In April 2008, LEAP moved to seal the transcript because it contains specific terms of the Settlement.  Neither Baker nor MoneyTrax opposed the motion.  By Order dated May 9, 2008,  the Court granted the motion ("Sealing Order").[2]  Significantly, the Court found that LEAP had a significant interest in keeping the terms of the Settlement confidential (1) to protect LEAP from competitors using the materials and information contained therein to unfairly compete against LEAP; and (2) because disclosure would put LEAP at a severe tactical disadvantage in enforcing and litigating its rights by having its litigation strategies, negotiation tactics, and business information made public.  See Order dated May 9, 2008.

After the conclusion of this action, LEAP filed a state lawsuit against Langford and various business entities, in which he is a principal or participant, alleging that Langford had misappropriated certain LEAP proprietary information.  Ullman's Cert. at ¶¶ 4, 33.  According to Langford, in order for him to establish his defense in the state court action, he needs to access the sealed portion of the transcript at issue.  Id. at ¶¶ 4-5, 34.  To that end, Langford asserts his common law right of access to all the records of the proceedings in this matter.  In that regard, Langford moved to intervene in this case and to unseal the transcript of the recorded settlement.  Lanford's motions were referred to the Magistrate Judge.

---

[2]  Disputes regarding the LEAP-Baker Settlement arose almost immediately thereafter. Consequently, on November 14, 2008, the Court facilitated another settlement agreement between LEAP and Baker; the terms of the second settlement were also recorded.  Those terms, however, are not the subject of Langford's appeal.

By Letter Ordered dated September 24, 2009, the Magistrate Judge permitted Langford to intervene, but denied his request to unseal the transcript.  In that Order, relying on this Court's prior findings of fact during the settlement, the Magistrate Judge reasoned that "[t]he Recording [of the transcript] [was] not part of the official court record and was only meant to serve as a reference for the parties when they drafted the actual agreement.  The parties agreed to keep the particular settlement terms confidential."  See Magistrate Judge's Order dated September 24, 2009 at p. 2.  Hence, the Magistrate Judge concluded that the March 25, 2008 recording "was not a judicial record and therefore is not accessible by the public . . . Neither Langford nor any other member of the public has a legitimate right in seeking access the parties' unfiled and privately recorded, confidential settlement agreement" Id.  Subsequently, Langford's appeal ensued.

## DISCUSSION

### I.    Standard of Review

As an initial matter, the parties dispute the standard of review applicable in this appeal.  The standard of review applied by this Court turns on whether the issue being appealed is "dispositive" or "non-dispositive."  The threshold question – whether the Magistrate Judge's determination to continuing sealing the transcript of March 25, 2008 is non-dispositive – must be resolved in the first instance.  According to Langford, since the determination to unseal the transcript is the sole remaining issue in the underlying matter, the resolution of his motion "terminates the proceedings from his point of view," and as such, the Magistrate Judge's decision is dispositive, which disposed of Langford's "business before the court."  Lanford's Brief In Support of Appeal at p.3.  Langford relies on the Third Circuit case of National Relations Board (NLRB) v. Frazier, 966 F.2d 812, 815 (3d Cir. 1992) for his position.  However, Frazier is neither factually or legally analogous to the

3

present case.  Before the Court elucidates the proper standard of review, some comments on <u>Frazier</u> are appropriate.

In <u>Frazier</u>, the NLRB had a pending unfair labor practice proceeding and it issued a subpoena <u>ad</u> <u>testificandum</u> to appellee employee.  The employee refused to testify and the NLRB filed an application for enforcement of its subpoena pursuant to § 11(2) of the National Labor Relations Act. <u>Frazier</u>, 966 F.2d at 814.  There was no other "case" or "controversy" before the district court.  The district court then referred the matter to a magistrate judge.  The magistrate judge denied the application and the district court affirmed the order, applying the clearly erroneous or contrary to law standard of review since the district court found that the application was a non-dispositive motion. <u>Id.</u> at 815.  On appeal, the circuit court reversed and held that the district court should have reviewed the magistrate judge's ruling <u>de</u> <u>novo</u>.  <u>Id.</u> at 815.  However, in that connection, the Third Circuit found that the motion to quash the subpoena was akin to a motion to dismiss as it had a final effect on the rights and duties of the parties.  <u>Id.</u> at 817.  The court reasoned that "[u]nlike the pretrial motions which district judges refer to magistrate judges, in this case the question of subpoena enforcement was not ancillary to the Board's main action in the district court. Rather, the Board applied to the district court in a special proceeding, under 29 U.S.C. § 161(2), the sole purpose of which was to aid the Board in compelling production of evidence and attendance of witnesses." <u>Id.</u> at 818.

Here, the facts contrast those in <u>Frazier</u>.  The Magistrate Judge's decision on Langford's motion to unseal does not dispose of any claim or defenses of a party, nor does it dispose of a case. <u>See</u> <u>In re Gabapentin Patent Litigation</u>, 312 F. Supp. 2d 653, 661-62 (D.N.J. 2004)(to determine whether a motion is dispositive or non-dispositive, the relevant inquiry is if the matter is "dispositive

of a claim or defense of a party" to the action "as contemplated by Fed. R. Civ. P. 72(a)").  In fact, the underlying action was closed when Langford filed his motions.  Indeed, Langford's motion to unseal bears no relation to the underlying claims between LEAP, MoneyTrax and Baker.  In that sense, the Magistrate Judge's determination is not the "functional equivalent" of a dismissal.  See Id. at 622.  While the Magistrate Judge's decision disposed of Langford's motion, that motion, however, is precisely the type of non-dispositive discovery dispute falling within the domain of magistrate judges.  See Id.; see also L Civ. R. 72.1(a) comment 2 (quoting Gabapentin, 312 F. Supp. 2d at 662).  Absent any controlling authority to the contrary, this Court will treat the matter as non-dispositive under § 636(b)(1)(A) and apply the clearly erroneous/contrary to law standard of review.  The Court will now turn to that standard.

The Magistrate Judge may 'hear and determine any [non-dispositive] pretrial matter pending before the court.'" Cardona v. Gen. Motors Corp., 942 F. Supp. 968, 971 (D.N.J. 1996) (quoting 28 U.S.C. § 636 (b)(1)(A)); see also Fed. R. Civ. P. 72(a).  Because the Court has found that the Magistrate Judge's ruling in this case is non-dispositive, this Court will only reverse that ruling if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  A magistrate judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, "is left with the definite and firm conviction that a mistake has been committed." Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990) (quotations omitted).  "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000) (citations omitted).

5

In contrast, "the phrase 'contrary to law' indicates plenary review as to matters of law." Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992); accord In re Human Tissue Products Liability Litigation, No. 06-135 (WJM), 2009 WL 1097671, * 1 (D.N.J. Apr. 23, 2009) (citation omitted). See also, Mruz v. Caring, Inc., 166 F.Supp.2d 61, 66 (D.N.J. 2001) ("[T]his Court will conduct a de novo review of a Magistrate Judge's legal conclusions."); accord Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." Kounelis v. Sherrer, 529 F.Supp.2d 503, 518 (D.N.J. 2008) (citing Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d 162, 164 (D.N.J. 1998)).

Furthermore, where the appeal seeks review of a matter within the exclusive authority of the magistrate judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied. Port Auth. v. Affiliated FM Ins. Co., No. 91-2907 (JWB), 2001 U.S. Dist. LEXIS 7579, at * 5 (D.N.J. Mar. 29, 2001); see also Nestle Foods Corp. v. Aetna Cas. and Sur. Co., No. 89-1701 (CSF), 1992 WL 233797, at * 1 (D.N.J. Sep. 8, 1992); Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. at 127. "An abuse of discretion occurs: 'when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted.'" Richards v. Johnson & Johnson, Inc., No. 05-3663 (KSH), 2008 WL 544663, at * 2 (D.N.J. Feb. 26, 2008) (quoting Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 115 (3d Cir. 1976)(internal quotation omitted)); see also United States v. Soto-Beniquez, 356 F.3d 1, 30 (1st Cir. 2003), cert. denied, 541 U.S. 1074 (2004) ("An abuse of discretion occurs when a "material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper

and no improper factors are assessed, but the court makes a serious mistake in weighing them")(internal citations omitted)).  "This test displays considerable deference to the determination of magistrates in such matters." Port Auth. v. Affiliated FM Ins. Co., 2001 U.S. Dist. LEXIS 7579 at * 5 (quoting 7 Moore's Federal Practice ¶ 72.03(7.-3) at 72-42 (1989)).  However, an error of law or finding of fact that is clearly erroneous may indeed constitute such abuse.  See, e.g., Marshak v. Treadwell, No. 08-1771, 2009 WL 1886153, at * 4 (3d Cir. Jul. 2, 2009) (noting on review of district court's contempt decision for abuse of discretion that reversal is appropriate "only where the decision 'is based on an error of law or a finding of fact that is clearly erroneous'"); see also Republic of the Philippines v. Pimentel, 128 S.Ct. 2180, 2189 (2008)("a court 'by definition abuses its discretion when it makes an error of law'")(quoting Koon v. United States, 518 U.S. 81, 99-100 (1996)).

## II.     Whether the Transcript of March 25, 2008 Conference Constitutes Judicial Proceeding

Langford invokes the right to access doctrine; under this doctrine, the public's right of access to judicial proceedings and judicial records is generally "beyond  dispute." Pichler v. UNITE, 585 F.3d 741, 746 n. 5 (3d Cir. 2009)(citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 780-81 (3d Cir. 1994) (citations omitted)).   However, the Third Circuit has instructed that a settlement agreement, that is not filed with the Court, is not  a "judicial record" for purposes of the right of access doctrine.  See Enprotech Corp. v. Renda, 983 F.2d 17, 20-21 (3d Cir. 1993); Pansy, 23 F.3d at 781. Accordingly, as an initial inquiry, whether or not a document or record is subject to the right of access turns on whether the document being sought is considered a "judicial record."  Relying on this Court's language in the Sealing Order, the Magistrate Judge found that the transcript of the

March 25, 2008 proceeding is "not part of the official court record and was only meant to serve as a reference for the parties when they drafted the actual agreement.  The parties agreed to keep the particular settlement terms confidential."  Magistrate Judge's Order at p. 2.

Indeed, this Court's Sealing Order contained the following sections:

1.   The materials that LEAP seeks to seal is a recording made on March 25, 2008 ("Recording") discussing the specific terms of the settlement agreement between the parties in this matter.

2.   On March 25, 2008, the parties to this matter reached a settlement agreement.  In order to capture the terms of the agreement, the parties were granted permission to use the tape recorder in [the Magistrate Judge's] courtroom in order to preserve the agreement.

* * *

4.   LEAP has a privacy interest in keeping this information from becoming public record as it contains sensitive business information of a private agreement between the parties.

* * *

6.   Upon consideration of the Declaration submitted by LEAP and the materials that LEAP seeks to have the Court seal, the Court concludes that LEAP has met its burden of proving, under L. Civ. R. 5.3 and applicable case law, that the materials described above should be filed under seal.  Specifically, the Court concludes that (a) the material clearly contain confidential information of the parties that the parties agreed to keep confidential as part of their agreement; (b) the parties have a legitimate interest in maintaining the confidentiality of the materials in order to protect themselves from their competitors who could use the materials and the information contained therein to unfairly compete with the parties and that would put LEAP at a severe tactical disadvantage in enforcing and litigating its rights; (c) that LEAP has shown that public disclosure of the materials would result in clearly defined and serious injury to the parties, and that this threat is imminent as demonstrated by requests already made seeking the material; and (d) that LEAP has shown that no less restrictive alternative to sealing the materials is available, as LEAP only requests that portions of the Recording are sealed or redacted and does not ask that any reference to

8

> their existence be sealed or that non-confidential information be
> protected.

Sealing Order dated May 9, 2008 at pp. 1-2.

In addition to the Court's Order on this subject, during the settlement conference, the Court

reinforced the confidential nature of the parties' agreement:

> First, of all, with regard to the confidentiality provisions of the settlement . . .,
> since you appear to want to submit this to me by an order, it's not going to
> happen because I cannot seal or make any order that I enter confidential.  So my
> suggestion to you people is that you place all of the terms of the settlement in
> a separate agreement and you can have me enter an order that simply dismisses
> the case and acknowledges that . . . the parties have entered into a separate
> agreement which they placed on the record.

Court Transcript dated March 25, 2008 at p.11.

> I don't see any reason to have the settlement itself, the terms of it, filed.  That's
> why I'm suggesting you not do that by way of order.  You can simply submit
> an order to me dismissing everything with prejudice and acknowledging that
> the parties have entered into a separate written settlement agreement which also
> the terms of which were placed on the record in open court on March 25, 2008.

Id. at p. 12.

On appeal, Langford urges this Court to unseal the transcript pursuant to his "pervasive

common law right" to gain access to the transcript of the proceeding.  Langford characterizes the

settlement conference as a judicial proceeding in the following manner:

> At about 6:30 PM, on March 25, 2008, this Court, in its robes, assumed the
> bench.  The parties appeared by counsel, all of whom noted their appearances,
> and the presence of the parties, on the record.  The Court having been advised
> that the parties had settled, and that they wished to read the terms of their
> settlement into the record, then asked, "And who will be placing the terms on
> the record?"  LEAP's attorney then read into the record the two agreements
> which had been reached that day settling the action as between LEAP and
> Norman Baker, on the one hand, and LEAP and MoneyTrax, on the other.

Langford's Letter Brief at p. 10.  Moreover, Langford points out that the Court referenced "on the

9

record" several times during the conference.  Accordingly, Langford posits that the transcript at issue memorialized a judicial proceeding.

To begin the analysis, the right of the public to inspect and copy judicial records antedates the Constitution.  United States v. Criden, 648 F.2d 814, 819 (3d Cir. 1981).  As a general matter, there is a "strong presumption" in favor of access to judicial records and proceedings in civil cases. Bank of America v. Hotel Rittenhouse Assoc., 800 F.2d 339, 343 (3d Cir. 1986).  With respect to access, the public is entitled to attend open court proceedings, as well as the right to inspect and copy judicial records, see Criden, 648 F.2d at 819, which include transcripts of civil proceedings. Littlejohn v. BIC Corp., 851 F.2d 673, 678-80 (3d Cir. 1988).  These rights promote public confidence in the judicial system.  Id. at 678.  However, the right of access is not absolute.

In Pansy, the Third Circuit delineated the boundaries of the doctrine.  The court explained that  "the Settlement Agreement which is subject to the Order of Confidentiality was never filed with, interpreted or enforced by the district court.  The district court  has not ordered any of the terms of the Settlement Agreement to be complied with.  Accordingly . . . the Settlement Agreement is not a judicial record."  23 F.3d at 781.  In so doing, the court rejected an argument that because the settlement agreement was subject to a confidentiality order, the agreement had been somehow converted to a judicial record.  The Third Circuit advised that district courts "have inherent power to grant orders of confidentiality over materials not in the court file."  Id. at 782, 785.  More importantly, "[s]imply because a court has entered a confidentiality order over documents does not automatically convert those documents into 'judicial records' accessible under the right of access doctrine. For example, when a court enters an order of protection over documents exchanged during discovery, and these documents have not been filed with the court, such documents are not, by

reason of the protective order alone, deemed judicial records to which the right of access attaches."
Id. at 782.

To demonstrate the applicability of Pansy, the Court finds Jackson v. The Delaware River and Bay Auth., 224 F. Supp. 2d 834 (D.N.J. 2002), instructive.  In that case, during trial, the parties reached a settlement agreement.  Then, they placed on the record their understanding of the terms of the agreement by referencing a draft settlement agreement, and agreed to its terms.  Id. at 836. As in this case, the parties there understood that the terms of the settlement agreement were confidential, and the court proceeding was not formally closed, however, no one was present except the interested parties.  Id.  Subsequently, the court entered an order dismissing the action.  After the case was dismissed, a member of the press filed a motion to intervene for the purpose of accessing the settlement terms.  Id. at 837.  Pursuant to Pansy, the court held that the transcript of the settlement proceeding was a part of the judicial record.  On the other hand, the actual settlement agreement which the parties prepared amongst themselves was not.  Id. at 839.  This line of reasoning is applicable to this case.

Here, like the Jackson court, this Court presided over the settlement conference, and indeed, facilitated the parties in settling the underlying case.  Just like in Jackson, the parties here placed on the record their agreement to settle the case and their understanding of the terms of the agreement. The parties also intended those terms to be confidential.  The parties never reduced the terms to a separate settlement agreement in writing.  As such, while the terms of a private settlement agreement was placed on the record, this does not preclude a finding that the March 25, 2008 proceeding was judicial in nature, particularly since the parties chose to place their assent and understanding of those terms on the record in open court.  See In re: Peregrine Sys. Inc., 311 B.R. 679, 688 (D. Del.

2004)("even though the public may not have a right of access to a sealed document, a document filed under a blanket sealing order is still a judicial record that is at least subject to the assertion of a right of access" (citing Leucadia v. Applied Extrusion Technologies, Inc., 998 F.3d 157, 165 (3d Cir. 1993)).[3]  In addition, a certified copy of the transcript was filed on the Court's docket, see Docket No. 54, and indeed, the Court subsequently entered an order sealing the transcript, further demonstrating that the transcript was made a part of the Court's file.  See Jackson, 224 F. Supp. 2d at 839; Leucadia, 998 F.2d at 161-162 ("The filing of a document gives rise to a presumptive right of access"); Zenith Radio Corp. v. Matsushita Electric Industrial Co., 529 F. Supp. 866, 897 (E.D. Pa. 1981) ("The right [of public access] undoubtedly attaches to all materials that are filed with the clerk of court, unless filed under seal pursuant to court order, because they are so clearly records within the meaning of the doctrine"); see also Pansy, 23 F.3d at 783 (documents not even part of the court file were accessible under the right of access doctrine because "they were duly submitted to the court" and were "relevant and material to the matters sub judice").  Accordingly, the Court finds that the transcript of the settlement proceeding on March 25, 2008, is part of the judicial record.  The Court notes that the Magistrate Judge's decision in this respect is based upon this Court's language in the Sealing Order, and to the extent this Court modifies its prior Order, the Magistrate Judge's decision is therefore modified to be consistent with this Opinion.

Since the Magistrate Judge never reached the determination of whether the terms of the Settlement should remain confidential, the Court will consider this issue on appeal. The Court notes that in its Sealing Order, it has previously decided that there was good cause then to seal the terms

---

[3]The Court is cognizant that the Sealing Order expressly states that the transcript was not part of the official record.  However, because the parties in this action consented to sealing the transcript, this Court did not engage in an in-depth analysis of the legal issues involved.

of the parties' agreement.  The Court will address whether the private terms of the Settlement should remain confidential.

### III.    Whether the Terms of the Settlement Should Remain Confidential

Although there is a general common law right to inspect and to copy judicial records and documents, the right is not absolute.  <u>Nixon v. Warner Communications, Inc.</u>, 453 U.S. 589, 598 (1978).  "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."  <u>Id.</u>  Hence, the common law merely establishes a presumption of public access to court proceedings and court records.  <u>Id.</u> at 602.  When determining access to judicial record, "the strong common law presumption of access must be balanced against the factors militating against access." <u>Littlejohn</u>, 851 F.2d at 678 (citation omitted).  In this endeavor, the Court may consider the following factors:

1.    Whether disclosure will violate any privacy interest;

2.    Whether the information is being sought for a legitimate purpose or for an improper purpose;

3.    Whether disclosure of the information will cause a party embarrassment;

4.    Whether confidentiality is being sought for information important to public health and safety;

5.    Whether the haring of information among litigants will promote fairness and efficiency;

6.    Whether a party benefitting from the order of confidentiality is a public entity or official; and

7.    Whether the case involves issues important to the public.

<u>Shingara v. Skiles</u>, 420 F.3d 301, 306 (3d Cir. 2005).  These factors are neither exhaustive nor mandatory.  <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 483 (3d Cir. 1995).  The discretion is

always left to the district court to evaluate the competing considerations in light of the facts of the individual cases.  <u>Pansy</u>, 23 F.3d at 789.

Likewise, when considering the modification of a confidentiality order, the court should use the same balancing test, with one difference:

> One of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order. The parties' reliance on an order, however, should not be outcome-determinative, and should only be one factor that a court considers when determining whether to modify an order of confidentiality. . . .Reliance on [confidentiality] orders [will] not insulate those orders from subsequent modification or vacating if the orders were improvidently granted <u>ab</u> <u>initio</u>. . . .Improvidence in the granting of a protective order is [a] justification for lifting or modifying the order.

<u>Pansy</u>, 23 F.3d at 790 (internal citations and quotation marks omitted).  Accordingly, whether a record remains sealed is within the discretion of the district court, and the court must: (1) recognize the common law presumption of public access; (2) apply a balancing test to determine prospectively whether the material to be sealed was "the type of information normally protected . . . or whether there [is] a clearly defined injury to be prevented" and (3) provide and explain its clear reasoning for sealing the record. <u>See</u> <u>In re Cendant</u>, 260 F.3d 183, 198 (3d Cir. 2001); <u>Zurich American Ins. Co.</u> <u>v. Rite Aid Corp.</u>, 345 F.Supp. 2d 497, 504 (E.D. Pa. 2004).

To overcome the common law right of access to judicial materials, "the party seeking closure of a hearing or the sealing of part of the judicial record bears the burden of showing that the material is the kind of information that the courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." <u>In re Cendant</u>, 260 F.3d at 194.  The Third Circuit has held that the interest in privacy is important to the balancing test.  <u>Pansy</u>, 23 F.3d at 787 (citation omitted).  In this regard, courts should ensure that there is no infliction of "unnecessary or

14

serious pain on parties."  Id.  Accordingly, the Court may deny access to judicial records, for

example, where they are sources of business information that might harm a litigant's competitive

standing, see Nixon, 435 U.S. at 598, or when disclosure might violate some other important privacy

interests.  See, e.g., Leucadia, 998 F.3d at 165-67.

Furthermore, the Court must remain cognizant of changed circumstances since the sealing

of the particular record:

> The strong presumption of public access forces district courts to be cognizant
> of when the reasons supporting sealing in a specific case (if any are found) have
> either passed or weakened, and to be prepared at that time to unseal [the record]
> and allow pubic access. Even if sealing was proper at the time when it was
> initially imposed, the sealing order must be lifted at the earliest possible
> moment when the reasons for sealing no longer obtain. . . . Continued sealing
> must be based on current evidence to show how public dissemination of the
> pertinent materials now would cause the [harm claimed].

In re Cendant, 260 F.3d at 196. (emphasis removed).

Here, the terms of the settlement agreement placed on the record, reflected in the transcript,

shall remain confidential.  The Court will first briefly summarize the factual background of this now-

closed action:  LEAP created a proprietary system through which the efficacy of personal financial

decisions can be analyzed on both a micro and macro economic basis (the "LEAP System").  The

LEAP System is a process that coordinates and integrates specialized money moves and strategies.

LEAP commenced this action against MoneTrax, a business competitor, and Baker, a former

employer, alleging that these defendants misappropriated proprietary and confidential information.

As indicated earlier, the parties attempted to settle on numerous occasions, in and out-of-court, but

they were unable to agree to the precise terms.  Only after this Court's intervention and assistance,

did the parties finally agreed to a set of specific terms, based upon certain treatment of the LEAP

license.  The Court presided over the settlement conference when these terms were placed on the record.  These terms contain proprietary information.  Hence, the parties agreed that the terms should be kept confidential.

At the time when this Court entered the Sealing Order, it made specific findings of fact. Notably, the Court found that "LEAP has a privacy interest in keeping this information from becoming public record as it contains sensitive business information of a private agreement between the parties." Sealing Order at ¶ 4. "Upon consideration of the Declaration submitted by LEAP and the materials that LEAP seeks to have the Court seal, the Court conclude[d] that LEAP ha[d] met its burden of proving, under L. Civ. R. 5.3 and applicable case law, that the materials described above should be filed under seal." Id. at ¶ 5.  Specifically, the Court reasoned that "the parties have a legitimate interest in maintaining the confidentiality of the materials in order to protect themselves from their competitors who could use the materials and the information contained therein to unfairly compete with the parties and that would put LEAP at a severe tactical disadvantage in enforcing and litigating its rights." Id.  Importantly, the Court was satisfied that "LEAP [had] shown that public disclosure of the materials would result in clearly defined and serious injury to the parties, and that this threat is imminent as demonstrated by requests already made seeking the material." Id.

On this appeal, Langford wants access to these terms, for the purpose of presenting his defenses in a separate state infringement action, to show, inter alia, that LEAP had placed its proprietary information in the public domain.  In response, LEAP argues that the public's right of access does not outweigh the irreparable harm that it would suffer if the terms were unsealed.  The Court is satisfied that LEAP has shown, on this appeal, that the terms are confidential information, and if they were revealed to the public, it would cause serious injury to LEAP – business competitors

may use the information to unfairly compete with LEAP, thereby placing LEAP at a severe tactical disadvantage.  See Nixon, 435 U.S. at 598.  Moreover, Langford's use of the information is not for the public's interests, but rather for his own private interests; as such, this matter does not involve issues important to the public.  More importantly, as this Court knows firsthand, settlement in this case would not have been reached but for the confidentiality agreement between the parties, and the parties' reliance that the Settlement would not be subject to public disclosure.  Indeed, the Settlement took many months to materialize and confidentiality was a material term.[4]  In this respect, disclosure will not promote fairness and efficiency and, in fact, would unfairly remove a material term of a private contract upon which LEAP based its decision to settle.  See Mar, Inc. v. JCM Am. Corp., 2007 U.S. Dist. LEXIS 9819, at *2 (D.N.J. Feb. 13, 2007)(finding a legitimate privacy interest in maintaining the confidentiality of terms to a business agreement that are not available to the public because otherwise the parties to the agreement could lose their future competitive negotiating positions and strategies, causing them to suffer serious injury); see also Vist Inda, Inc. v. Raaga, LLC, 2008 U.S. Dist. LEXIS 24454, at *9 (D.N.J. Mar. 27, 2008)(finding a legitimate privacy interest in settlement agreements between third parties that, if made public, would reflect negotiation strategies and pricing terms and would impair future negotiations and give competitors an advantage).

        The Court also does not find at this time that there has been any material change since sealing the terms of the Settlement that would serve as a legitimate basis for the Court not to continue sealing these terms.  Consequently, having balanced all the appropriate interests and factors,

---

[4]Certainly, Langford's counsel, Mr. Ullman, who participated in the previous settlement discussions, is aware of the importance of the confidentiality nature of the Settlement.

the Court finds that there is no basis for modifying or vacating the Sealing Order.  The Court notes, however, any portion of the transcript of the judicial proceeding on March 28, 2008, which does not reflect confidential terms may be unsealed.  As stated supra, any sensitive business information is to remain sealed.   However, colloquy between the Court and the parties regarding their understanding and assent to the terms of the Settlement, for example, is the type of information that is not confidential and thus, should be unsealed.  LEAP shall review the entire transcript and redact those portions of the transcript that reflect confidential information and make available the redacted version to Langford.

The Magistrate Judge's decision is hereby AFFIRMED and MODIFIED.


DATED:  June 1, 2010                                           /s/ Freda L. Wolfson
                                                              Hon. Freda L. Wolfson
                                                              United States District Judge

18